WILBUR R. LANGFORD AND ANNA L. LANGFORD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Langford v. Commissioner
Docket No. 13638-87.
United States Tax Court
T.C. Memo 1988-300; 1988 Tax Ct. Memo LEXIS 331; 55 T.C.M. (CCH) 1267; T.C.M. (RIA) 88300; July 19, 1988. Wilbur R. Langford and Anna L. Langford, pro se. Howard P. Levine, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioners' 1983 Federal income tax of $ 3,012. The issues we must decide are: (1) whether petitioners failed to report interest income and (2) whether income earned by petitioner Anna L. Langford from royalties as an author is subject to self-employment tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Cordova, Tennessee at the time the petition in this case was filed and were husband and wife at all times during the taxable year 1983. Petitioners filed a joint return for the year in issue as cash method taxpayers. During 1981 petitioners sold a rental apartment (the "Smith property"). Petitioners had purchased *333 the Smith property in 1976 and had obtained a loan from University Bank and Trust Company of America evidenced by a mortgage note dated September 13, 1976, to finance the purchase price. The mortgage note was in the amount of $ 70,000 plus interest at 9 percent per annum. On January 26, 1981, petitioners sold the Smith property located in Story County, Iowa to Bradley G. Kaltenheuser pursuant to a real estate sales contract recorded in the Recorder of Deeds Office ("Kaltenheuser Contract") for $ 114,000 and financed $ 96,500 of the purchase price over five years at 9 1/2 percent interest with payments of $ 800 per month and a balloon payment due at the end of the five-year period. Petitioners continued to make payments to University Bank and Trust Company to service their loan. On March 1, 1982, Kaltenheuser sold the Smith property to Jerry D. Smith for $ 117,500. The real estate contract required Smith to pay $ 13,500 down, $ 7,991.46 to Kaltenheuser in installments of $ 261.91 with interest at 11 percent and $ 96,008.54 to petitioners. The real estate sales contract between Kaltenheuser and Smith (the "Smith Contract") provides: The remaining Ninety-Six Thousand Eight and *334 54/100 Dollars ($ 96,008.54) by payments directly to W. Reed Langford and Anna L. Langford (contract vendors in a certain real estate contract to Seller herein dated January 26, 1981, and filed in the office of the Recorder of Story County, Iowa, on February 6, 1981, in Book 187, Page 263) of Eight Hundred Dollars ($ 800.00) on or before the first day of April, 1982, and a like sum of $ 800.00 on or before the first day of each month thereafter until September 1, 1986, at which time the then entire unpaid principal balance on said contract and all accrued, unpaid interest shall be paid in full, interest to accrue on such unpaid balances at the rate of Nine and One-Half Per Cent (9.5%) per annum from date of possession, payable monthly, with all payments first to be applied to interest then unpaid and the balance credited to principal.
Kaltenheuser remained liable to petitioners on the Kaltenheuser Contract. The Smith Contract obligates the Smiths to pay petitioners the amounts due them pursuant to the Kaltenheuser Contract. Petitioners received $ 9,600 (12 payments at $ 800 per month) during 1983 pursuant to the terms of the Kaltenheuser Contract. Pursuant to the amortization *335 schedule of the contract, petitioners received in 1983 interest income of $ 9,062.57. Petitioners failed to report this interest income on their 1983 Federal income tax return. Petitioners concede on brief that they received interest income of $ 4,668.74 in 1983 from the installment sale of their residence in Iowa (the "Redmond property"). Petitioners erroneously reported a loss on the sale of the Redmond property by reference to the difference in interest rates between the rate they received on the installment sale of the Redmond property and the interest rate they paid on the mortgage on their present house. Petitioners deducted on Schedule A of their return the full amount of the interest they paid on their home mortgage. In 1983 petitioners purchased two pieces of rental property in Gainesville, Florida and paid loan discount points of $ 2,794.75 and $ 3,614.63 to Empire of America and Vantage Mortgage Association, Inc., respectively. Petitioners also paid closing costs of $ 310 on the property financed by Empire of America, Inc. and $ 344.53 on the property financed by Vantage Mortgage Association, Inc. On their 1983 return petitioners deducted the interest points and *336 closing costs paid on their purchases of the rental properties. Respondent disallowed the deduction of these expenses, required the points to be amortized over the term of each loan and added the closing costs to the depreciable bases of the properties. Petitioners concede on brief that interest points should be amortized over the term of the loan on which the points were paid and that closing costs should be added to the depreciable bases of their rental properties. From 1974 through 1978 petitioner Anna L. Langford was an assistant professor at Iowa State University. On January 16, 1976, petitioner accepted a contract to co-author the fifth edition of a textbook entitled Textiles. This work was completed in 1977 and was published in 1979. Petitioner received book royalty income from MacMillan Publishing Company, Inc., from her contributing work in the amounts of $ 5,313.25, $ 4,299.79, $ 4,796.77, and $ 4,166.68 in 1980, 1981,1982, and 1983, respectively. On December 7, 1983, petitioner accepted a contract to be the principal author of the sixth edition of the textbook. This contract was amended by letter on June 20, 1986, making petitioner a co-principal author, entitling *337 her to receive 35 percent of the royalties. On her 1983 Federal income tax return, petitioner listed her occupation as "author and homemaker." Respondent determined that petitioner was in the trade or business of being an author and therefore was subject to self-employment tax. OPINION The first issue we must decide is whether petitioners failed to report interest income in the amount of $ 13,731.31. Petitioners have the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners concede on brief that they received $ 4,668.74 in interest on the installment sale of the Redmond property and that they failed to properly report this amount on their 1983 return. Petitioners continue to dispute the amount of interest income that they received on the installment sale of the Smith property. Smith agreed to pay petitioners pursuant to the terms of the Kaltenheuser Contract an installment obligation which had an outstanding principal amount due of $ 96,008.54. The *338 terms of the installment obligation entitled petitioners to receive monthly payments of $ 800, including interest on the unpaid balance at the rate of 9 1/2 percent per annum with payments applied first to interest. In accordance with the express terms of the Kaltenheuser Contract petitioners received $ 9,600 from Smith in 1983, $ 9,062.57 of which constituted interest income includible in petitioners' gross income pursuant to section 61(a)(4). [1]
Petitioners argue that they earned interest on the sale of the Smith property in 1983 in the amount of $ 537.42 as reported on a Form 1099 filed by Jerry D. Smith in 1983. We are not persuaded that the Form 1099 accurately reflects the interest income received by petitioners from Smith. Petitioners have not explained the difference between the $ 537.43 reported on the Form 1099 and the amortization schedule which allocated to interest $ 9,062.57 of the $ 9,600 they received. [2] The reported amount on the Form 1099 appears to be the difference between the amount Smith paid to petitioners in 1983 and the interest due. In other words, *339 the Form 1099 appears to report the principal payments that Smith made to petitioners. The next issue we must decide is whether income received by petitioner Anna Langford from royalties is subject to self-employment tax pursuant to section 1401. Section 1401 imposes a tax on an individual's "self-employment income." Self-employment income is defined as "net earnings from self-employment" with certain exceptions not applicable here. Section 1402(b). Net earnings from self-employment is gross income, less certain deductions derived by an individual from any "trade or business" carried on by such individual. Gross income derived by an individual from any trade or business includes income received in the taxable year from a trade or business even though such income may be attributable to services rendered in a prior tax year. Section *340 1.1402(a) - 1(c), Income Tax Regs. This regulation sets the reference for determining self-employment income as the activity that generated that income. Accordingly, because the royalties that petitioner received in 1976 and 1977, to determine if the royalties were derived from petitioner's trade or business, we look to petitioner's authoring activities in 1976 and 1977. For purposes of the self-employment tax provisions, the term "trade or business" has the same meaning as in section 162 (relating to trade or business expenses). Section 1402(c). This determination must be made on the basis of all the facts and circumstances of this particular case. Commissioner v. Groetzinger,480 U.S.   , 107 S. Ct. 980 (1987); Higgins v. Commissioner,312 U.S. 212 (1941). It has been respondent's long-standing position that "If an individual writes only one book as a sideline and never revises it, he would not be considered to be 'regularly engaged'in an occupation or profession and his royalties therefrom would not be considered net earnings from self-employment. *341 " Rev. Rul. 55-385,1955-1 C.B. 100; Rev. Rul. 68-498, 1968-2 C.B. 377. Petitioners relied on these rulings in litigating this case. All of the royalty income petitioner received in 1983 was attributable to her work on the textbook in 1976 and 1977. She had no obligation to work on further revisions of the book and did not sign a contract to assist with the sixth edition of the textbook until 1983, more than five years after her work was completed on the fifth edition. Petitioner's co-authorship of the fifth edition of Textiles falls squarely within the statements in Rev. Ruls. 55-385 and 68-498. Petitioner's authoring activities in 1983 should be disregarded because those activities were not the source of her royalty income. Her royalties were not contingent on any performance of future services and would continue until the volume of sales of the fifth edition fell below an agreed level. There was no express or implied understanding that petitioner would have any part in the sixth edition until December 1983. The five-year hiatus between petitioner's work on the fifth edition of Textiles in 1976 and 1977 and the sixth edition of the textbook in 1983 persuades *342 us that her authoring activities were not engaged in regularly. We hold, therefore, that petitioner was not in the trade or business of being an author in 1976 or 1977 and that the royalty income received by her in 1983 attributable to her work in the earlier years is not net earnings from self-employment and not subject to self-employment tax. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated. ↩
2. Petitioners state on brief that the Form 1099 was not entered into the record. On the contrary, this form was not only part of the record it was also received in evidence as part of the stipulation of facts, and it has been considered in our decision. ↩